WISCONSIN EDUCATION ASSOCIATION
COUNCIL and WEAC–PAC Plaintiffs-Appellants-
Petitioners,

v.

The Wisconsin STATE ELECTIONS BOARD, Peter
Dohr, Frederic Mohs, Don Moecker, Thomas Godar,
Mark Sostarich, Robert Turner, John Niebler, Evan
Zeppos, Kevin Kennedy, and Their Officers, Agents,
Servants and Employees, Defendants-Respondents.

Supreme Court

*No. 89-0551. Argued May 29, 1990.—Decided June 28, 1990.*

(Also reported in 456 N.W.2d 839.)

For the plaintiffs-appellants-petitioners there were briefs by *Robert H. Friebert, Charles D. Clausen, Peter K. Rofes* and *Friebert, Finerty & St. John, S.C.,* Milwaukee and oral argument by *Robert H. Friebert.*

For the defendants-respondents there was a brief by *Burneatta L. Bridge,* assistant attorney general, with whom on the brief was *Donald J. Hanaway,* attorney general and oral argument by *Alan Lee,* assistant attorney general.

LOUIS J. CECI, J. This case is before the court on review of an unpublished opinion and order of the court of appeals, dated August 21, 1989, which dismissed as moot an appeal from a final order of the circuit court for Dane county, James C. Boll, Circuit Judge. The petitioners, Wisconsin Education Association Council (WEAC) and its political action committee (WEAC-PAC), commenced an action seeking a declaratory judgment that sec. 11.29(1), Stats., exempts from the disclosure requirements and contribution limitations of ch. 11, Stats., all expenses incurred by the association in communicating with its members about political matters, even if those expenses are incurred at the request or suggestion of a candidate or his or her campaign committee. In the alternative, the petitioners sought a declaration that if sec. 11.29(1) were administered and enforced to regulate communication among its members, the statute, as applied, would be unconstitutionally vague and would deprive its members of their rights to free speech and association guaranteed by the federal and state constitutions.

The circuit court concluded that the exemption contained in sec. 11.29(1), Stats., was limited by the plain language of the statute. The circuit court ruled, in essence, that disbursements made in connection with the

political communications of a voluntary association may be subject to disclosure and limitation under ch. 11, Stats., when those communications are prompted by the request or suggestion of a candidate and are in the nature of a contribution to the candidate's campaign. The circuit court refused to address the petitioners' constitutional challenges to the statute as applied on the ground that those issues were not ripe for determination. On appeal, the court of appeals determined that the issues in this case had become moot and dismissed the appeal. Although we affirm the court of appeals' decision to dismiss this case, we do so on the ground that the circuit court did not abuse its discretion in concluding that the case was not ripe for determination.

The facts of this case follow. WEAC is a voluntary association of teachers, administrators, and other employees of educational systems throughout Wisconsin. WEAC-PAC is a committee of WEAC which engages in political activities to further the objectives of the association.[1] In May of 1988, WEAC announced that it intended to hire interns from among its members to work to mobilize the membership in support of those candidates whom WEAC planned to endorse in the upcoming November elections. WEAC also announced that each intern would be paid a salary of $7,500 and would work full time during the summer and part time during the school year until the November elections.

WEAC eventually hired twenty interns to work in the program and created a job description for the interns. The job description stated, among other things, that the interns would be required to: (1) contact members concerning the placement of yard signs; (2) prepare materials and find volunteers for legislative drops; (3)

[1]Both WEAC and WEAC-PAC will be referred to collectively in this decision as WEAC.

organize a "get out and vote" effort among WEAC members for the primary and general elections; (4) organize and supervise direct mail projects to members of the association; (5) develop a list of the community activities in which members should participate to advocate the election of endorsed candidates; (6) inform WEAC members of the dates on which candidates would be appearing in their localities; (7) organize and supervise telephone banks to call members; and (8) perform other duties and activities as assigned.

After learning of the intern program, members of the State Elections Board (the Board)[2] became concerned that expenses incurred by WEAC in connection with certain intern activities might constitute campaign contributions and cause WEAC to be in violation of the contribution limitations of $1,000 per senate race and $500 per assembly race set forth in secs. 11.26(2)(b) and (c), Stats. In particular, the Board members were of the opinion that certain activities, if undertaken by the interns at the request or suggestion of a candidate or his or her campaign committee, might constitute contributions to that candidate. As a result of its concerns, the Board met with the legislative director of WEAC on July 25, 1988, to discuss the operation of the intern program. By letter dated August 2, 1988, the Board informed WEAC that it planned to take no formal action with respect to the intern program because there was no evidence that WEAC had acted inconsistently with the campaign financing laws.

On September 7, 1988, WEAC commenced a circuit court action seeking a declaratory judgment that sec. 11.29(1), Stats., exempted from the reporting require-

[2]Under sec. 5.05(1), Stats., the Board is charged with the duty of administering ch. 11, Stats., and other laws relating to elections and election campaigns.

ments and contribution limitations of ch. 11 any expense incurred by WEAC interns in communicating with WEAC members about political matters, even if those expenses were incurred as a result of contact with an endorsed candidate or his or her campaign committee. In the alternative, WEAC sought a declaration that if the Board administered and enforced sec. 11.29(1) to regulate political communication among WEAC's members, the statute, as applied, would violate its members' rights to free speech and association and would be unconstitutionally vague. The circuit court dismissed the complaint without prejudice, concluding that the action had been commenced prematurely because WEAC had failed to first obtain a formal opinion from the Board pursuant to sec. 5.05(6), Stats.[3]

Thereafter, WEAC filed a request for a formal opinion with the Board. On October 18, 1988, the Board issued an opinion which stated that the operation of the exemption contained in sec. 11.29(1), Stats., is not dependent on whether a communication is initiated at the request or suggestion of a candidate, but rather on the nature of the communication to the membership. The opinion advised that the sec. 11.29(1) exemption is limited to communications which (1) emanate from the organization to its membership to the exclusion of all others; (2) concern the endorsements of candidates, positions on a referendum or an explanation of the organization's views or interests; and (3) are paid for by the organization. The opinion stated that if an organization

[3]On September 28, 1988, WEAC appealed to the court of appeals and filed a motion to accelerate the appeal. On October 7, 1988, the court of appeals denied the motion to accelerate the appeal and on January 4, 1989, the court of appeals dismissed the appeal as moot because WEAC had since commenced another action in circuit court involving the identical issues and parties.

communicates with its members in cooperation or consultation with, in concert with, or at the request or suggestion of a candidate, that communication must be limited to informing the membership of the organization's endorsement of the candidate or of the organization's views and interests in relation to the candidate to fall within the statutory exemption. The opinion finally stated that because WEAC did not describe the nature of the communications which its interns would undertake, the Board was unable to determine whether expenses incurred in connection with those communications would be exempt from disclosure and limitation under sec. 11.29(1).

On October 14, 1988, WEAC commenced a second circuit court action requesting the same declaratory relief that it had requested in the previous circuit court action. The circuit court dismissed the case on February 27, 1989. The circuit court ruled that the plain language of sec. 11.29(1), Stats., limited the types of communications which are exempted from disclosure and limitation under ch. 11 and refused WEAC's invitation to edit those limitations from the face of the statute. With respect to WEAC's constitutional claims, the circuit court observed that sec. 11.29(1) had never been applied to WEAC in the sense that no complaint had been filed against WEAC with the Board. The circuit court ruled that it was not sufficiently apprised of WEAC's position in relation to the campaign financing laws to determine whether any portion of sec. 11.29(1) would be unconstitutional as applied to its members.

WEAC appealed the circuit court's dismissal to the court of appeals. On August 21, 1989, the court of appeals dismissed the appeal as moot because the intern program had ceased operation after the elections in November of 1988. WEAC petitioned this court for

review of the court of appeals' dismissal and filed a motion to supplement the record with an affidavit reflecting its intention to continue the intern program in the future. We granted the petition and the motion. As previously stated, we affirm the court of appeals' decision to dismiss the case, but on the ground that the circuit court did not abuse its discretion in concluding that the case was not ripe for determination.

The first issue presented in this case concerns the construction of sec. 11.29(1), Stats., which exempts from the reporting requirements and contribution limitations of ch. 11 expenses incurred in connection with the political communications of corporations, cooperatives, and voluntary associations under certain circumstances. The interpretation of a statute is a question of law, which this court decides independently and without deference to the decisions of the lower courts. *Sacotte v. Ideal-Werk Krug & Priester*, 121 Wis. 2d 401, 405, 359 N.W.2d 393 (1984). Section 11.29(1) provides in relevant part:

> Nothing in this chapter restricts any . . . voluntary association . . . from making disbursements for the purpose of communicating only with its members . . . to the exclusion of all other persons, with respect to endorsements of candidates, positions on a referendum or explanation of its views or interests, without reporting such activity. No such . . . voluntary association may solicit contributions from persons who are not members . . . to be used for such purposes.

The Board interprets sec. 11.29(1), Stats., to exempt from disclosure and limitation under ch. 11 any expense incurred by a voluntary association in communicating its political views or interests exclusively to its members.

Under the Board's construction of the statute, a communication will be insulated from governmental regulation if the communication (1) emanates from the organization to its membership to the exclusion of all others; (2) consists of endorsements of candidates, positions on a referendum or an explanation of the organization's views or interests; and (3) is paid for by the organization. According to the Board, the question of whether a particular communication is protected by the statute is dependent on its nature and scope. If a communication is made in cooperation with, in concert with, or at the request or suggestion of a candidate and is not restricted to the membership, the communication will generally be treated as a contribution and will be subject to disclosure and limitation under ch. 11.

WEAC argues that the Board's definition of the types of political communication protected by sec. 11.29(1), Stats., is too restrictive. In WEAC's view, the statute exempts from disclosure and limitation any expense incurred in connection with any communication between a WEAC intern and WEAC members, regardless of whether the communication is prompted by the request or suggestion of a candidate and regardless of whether that communication ultimately goes beyond the membership to the general public. WEAC's position is essentially that as long as some communication of a political nature occurs among its members at some point in the chain of events, that communication immunizes the entire transaction from regulation as a contribution under the provisions of ch. 11. We reject WEAC's construction of sec. 11.29(1) as contrary to the plain language of the statute and to the declared purpose of ch. 11.

Chapter 11, Stats., seeks to protect the integrity of the elections process by requiring full disclosure of all

contributions and disbursements made on behalf of every candidate for public office and by placing reasonable limitations on such activities. *See* sec. 11.001. To this end, corporations, cooperatives, and unregistered organizations are prohibited from directly engaging in activity of a political nature. However, an organization may establish a separate political committee which utilizes segregated funds for the purpose of supporting or opposing any candidate for political office. Section 11.38(1)(a). A political committee is required to report contributions and disbursements which it makes on a periodic basis and is subject to the limitations on candidate contributions set forth in ch. 11. *See* secs. 11.06(1) and (7) and sec. 11.26(2). Expenses incurred by a political committee in cooperation or consultation with, in concert with, or at the request or suggestion of a candidate are generally treated as candidate contributions under Wisconsin law. *See* sec. 11.06(7m).

Section 11.29(1), Stats., provides an exemption from the disclosure requirements and contribution limitations of ch. 11 when an organization incurs expenses in connection with certain political communications. WEAC asks this court to declare that the sec. 11.29(1) exemption is without limitation. Such a declaration, however, would require this court to erase from the face of the statute that language which states that the exemption is limited to disbursements made for the purpose of "communicating only with [the organization's] members . . . to the exclusion of all other persons" with respect to the "endorsements of candidates . . . or [an] explanation of [the organization's] views or interests." The plain language of sec. 11.29(1) compels the conclusion that disbursements made in connection with political communications which exceed the scope of the statute are subject

160

to disclosure and limitation under ch. 11. To hold otherwise would allow WEAC and other similarly situated organizations to evade the requirements and limitations of ch. 11 by simply structuring their political contributions to coincide with some incidental communication among members.

We next turn to WEAC's alternative argument that the circuit court erred in refusing to issue a declaratory judgment holding the statute unconstitutional as applied to its members. The decision to grant or deny relief in a declaratory judgment action is a matter within the sound discretion of the circuit court. *State ex rel. Lynch v. Conta,* 71 Wis. 2d 662, 668, 239 N.W.2d 313 (1976). In order for declaratory relief to obtain, there must be a justiciable controversy which (1) involves a claim of right on the part of the plaintiff which is asserted against one who has an interest in contesting it; (2) is between two persons whose interests are adverse; (3) involves a legally protectible interest in the person seeking declaratory relief; and (4) is ripe for judicial determination. *Loy v. Bunderson,* 107 Wis. 2d 400, 410, 320 N.W.2d 175 (1982); *Lister v. Board of Regents,* 72 Wis. 2d 282, 306, 240 N.W.2d 610 (1976).

WEAC argued to the circuit court that administration and enforcement of the Board's narrow interpretation of sec. 11.29(1), Stats., would deprive its members of their rights to free speech and association guaranteed by the federal and state constitutions. WEAC argued, in addition, that administration and enforcement of the Board's interpretation of the statute would render sec. 11.29(1) unconstitutionally vague because it would fail to give WEAC members sufficient notice of the types of communications exempted by the statute. The circuit court observed that the statute had never been applied to

WEAC and refused to issue declaratory relief on the ground that the court was not adequately apprised of WEAC's status in relation to the campaign financing laws to decide if sec. 11.29(1) would be unconstitutionally applied to WEAC.

Our review of the record persuades us that the circuit court reasonably concluded that the instant controversy was sufficiently contingent and uncertain so as to preclude declaratory relief. Throughout this litigation, WEAC has refused to specify the nature and scope of the communications which will occur between its members and the interns. Such refusal prevented the Board from issuing an opinion indicating whether expenses incurred in connection with the communications would be exempt from disclosure and limitation under ch. 11, Stats. The circuit court properly observed that to resolve WEAC's constitutional claims would require the court to speculate both on the nature of WEAC's conduct and on the enforcement posture of the Board with respect to that conduct. As presently situated, there is no actual controversy between the Board and WEAC nor any indication that a controversy is likely to arise in the future. On these facts, we agree that the issues are not sufficiently crystallized to allow a court to decide whether the statute would be unconstitutionally applied to WEAC. We find no abuse of discretion.

*By the Court.*—The opinion and order of the court of appeals is affirmed.

WILLIAM A. BABLITCH, J. (dissenting). The two issues can be simply stated: 1) Are political intra-associational communications "contributions" to a candidate within the meaning of Wisconsin's Campaign Finance Law if the communications are prompted by a

candidate or candidate's campaign committee? 2) If so, is such law constitutional?

## I.

As best I can discern, the majority opinion holds that "disbursements made in connection with political communications which exceed the scope of the statute are subject to disclosure and limitation under ch. 11." Majority op. at 160, 161. There can, of course, be no argument with that conclusion. The problem, unless I'm missing something, is that this conclusion begs the question. The question presented by WEAC is whether any intra-associational disbursements, if prompted by a candidate or a candidate's organization, "exceed the scope" of the statute. WEAC wants, and deserves, an answer to that question. The answer of the majority seems to be "maybe."

I conclude, based on the legislative history, the clear and unambiguous language of sec. 11.29(1), Stats., and the constitutional implications if interpreted otherwise, that expenses incurred by a voluntary association in communicating exclusively with its members about political matters, regardless of the impetus of such communication, need not be reported and are not contributions within the meaning of ch. 11.

## II.

I cannot comprehend how the majority can conclude that we do not have sufficient facts to resolve the second issue, the constitutional question presented. The majority says, in essence, that they need to know the nature of the intra-associational communication before they can issue an opinion on the statute's constitutionality. WEAC claims that *any* intra-associational political com-

163

munication is constitutionally protected, regardless of source or impetus. We do not need to know the nature of the communication to answer that issue as presented by WEAC. *Any* political communication, WEAC says, is protected. Thus, any example of a political intra-associational communication we could surmise, without limitation, is covered by WEAC's argument. What more could we possibly need to answer the constitutional question presented?

WEAC is now left in an untenable position because of the majority's failure to adequately answer the first issue, and their failure to answer at all the second. Is *any* political intra-associational expenditure prompted by a candidate or a candidate's organization a contribution? If it depends upon the "nature" of it, what communications are included and what are not? Does the nature of the communication depend upon the type of expenditure? Or does it depend upon the type of prompt? If so, what "type" of expenditure, what "type" of prompt?

WEAC is now caught between Scylla and Charybdis. They can forego political activity which they believe is constitutionally protected, or they can proceed with their plans at their peril. In order to find out what the law means, they must proceed, but proceed with the knowledge they may be either breaking the law or coming perilously close to doing so. I dissent.